Daniel, J.
The main questions to be considered are: First, whether the will of the testator confers upon his wife Frances the power to sell the real estate ? And if so, secondly, whether the purchaser is bound to see to the application of the purchase money ?
The second clause of the will, taken apart from the other provisions, seems to me to indicate a design on the part of the testator, to leave his wife, after his death, clothed with all the control over his estate which he had himself enjoyed in his life time, subject only to the restriction that his children, as a class, should become ultimately the beneficiaries of the whole, and that each of his children should receive a portion of the estate.
The expressions of confidence in respect to his wife’s distribution and disposition of the estate, whilst they raise a trust in favor of the children, impose no limitation on the discretion of the donee of the power, as to the time or mode of executing it. Under this clause, the appointment might be made by Mrs. Steele, in her life time, by the performance of any act or the execution of any instrument by her, which would be sufficient to pass property of the like kind belonging to her absolutely; or she might defer the appointment till her death, and make it by last will and testament. I think it equally clear that she is left free to select the species of property belonging to the estate, to be appointed to the several children; that she might give *460 land to one, slaves to another, and money or bonds to a third. The power to sell the estate, or any portion of it, is not given expressly, but is, I think, fairly to be inferred from the obvious scheme of the testator and the broad terms used in relation to the distribution and disposition of the property. A power to convert land into money or money into land or other species of property, and thus to shape and adapt the intended bounties to the wants and conveniences of the several beneficiaries, falls so manifestly within the scope of the broad and parental control with which it was the design of the testator to leave his wife invested after his death, that it seems to me, to deny it, would be to run counter to the rule which makes the intention of the testator the main guide in the construction of his will.
The courts have been liberal not only in sustaining a substantial execution of the power in cases where the appointment has been perfected, but also in inferring the power- to sell when essential to the full execution of the trust, in cases where efforts have been made to arrest the donee of the power in the course of his proceeding to execute it. Thus in the case of Roberts v. Dixall, 2 Equ. Cas. Abr. 668, where a father had a power to appoint and divide an estate among his children in sueh proportions as he should think proper, and bequeathed a legacy of three thousand pounds to one of them as a charge upon the estate, Lord Hardwicke held that the power was in substance well executed. “It is true (he said) the direct terms of the power are not pursued, but the intent and design of it are. It is admitted that the father might have appointed part of the estate to be sold and the money raised by such sale; and what is done is exactly the same thing; this court may order a sale.”
So in Long v. Long, 5 Ves. R. 445, where a father was clothed with a power to charge an estate with the *461 payment of such sum or sums of money for the benefit of such child or children, payable in such proportions and at such time or times as he should by deed or by will direct, limit and appoint, the power was held well executed by a will directing a sale and appointing the money.
And again, in the case of Kenworthy v. Bate, 6 Ves. R. 793, where an estate was devised to the use of such child or children as the father should, by his will, give, direct, limit and appoint, the power was held to be substantially executed by a devise by the father to trustees to sell, and an appointment of the money produced by the sale. The master of the rolls said, it having been decided that a power to charge included a power to sell, it would be difficult to maintain that a power to give did not include a power to sell for the purpose of giving the money instead of the land.
In the case of Winston v. Jones, &c. 6 Alab. R. 550, the will was in many of its features like the one here, and the question whether a power of sale was given, was considered in immediate reference to its bearing on the rights and responsibilities of the purchaser. The decision in that case is, therefore, more directly applicable to the state of things in this. The will in that case, after providing for the payment of the testator’s debts, and giving one-third of the real estate to his wife for life, proceeds: “ Now it is my will and desire that after the payment of all my just debts and allotting to my wife her portion, to add to the residue of my estate of every description, the sum of one dollar value of property conveyed in trust for the use of my daughter Sarah W. Washington, and to divide the sum total, after making such addition, into seven parts; and I do hereby direct my executors to distribute and pay over the residue of my estate, both real and personal, in the following manner, to wit: After *462 deducting from one of said seven parts the said sum of one dollar conveyed for the use of my daughter Sarah W. Washington, to pay over to said trustees the residue of said portion to be held by them in like trust for her use, &c. and to pay to my other children (naming them) each one-seventh part of the residue of my estate as aforesaid,” &c.
The executors sold a tract of land belonging to the estate of the testator, and received the purchase money; but having delayed to make the conveyance, the purchaser filed his bill seeking to. rescind the contract, and for general relief, mainly on the ground that the will did not confer on the executors the power of making sale of the real estate of their testator. The bill was dismissed by the chancellor on demurrer; and the court of appeals affirmed his decree.
The court held that no precise form of words was necessary to the creation of a power of sale : If the intention to confer the power was apparent, to enable the executor to execute the trusts of the will, it would be inferred. They said that the use of the terms add to the residue of his estate of every description the sum of one dollar, &c.; and after making such addition, to divide the sum total into seven parts, and to distribute and jpay over the residue of the estate, both real and personal, &c., was persuasive that the prevailing idea in the testator’s mind was, that of a sum of money which might be added to, divided and paid over. It ought not to be overlooked (they further said) in construing the will, that an entire plantation is more valuable as a whole, than the aggregate of all its parts would be if divided-; and that the process of selling land so circumstanced, for the purpose of more equal distribution, is common in the country; the power being lodged with the County court, and with which all pejsons were familiar. The probability, therefore, *463 was, that the testator was merely providing by his will for doing that which he knew would be done on application to the County court.
Much of the reasoning on which the decision in that case was rested, is, I think, applicable to this. And whilst there are no terms employed in the clause of the will under consideration, which, in their ordinary sense, negative the idea of a distribution of the estate in kind, the terms “ to dispose of to each of my children in any way she may think proper and right,” are, I think, sufficiently broad to confer a discretionary power not only in respect to the shares and proportions in which the estate is to be distributed, and the act or instrument by which it is to pass, but also to the kind, form 'or nature of the property which may be given; as whether real estate or personal chattels, or the proceeds of both or either, in the shape of bonds or money. That these terms were designed to confer such a power is, I think, rendered more probable when they are read in connection with the terms “ knowing' that she will distribute to each of my children in as full and fair a manner as I could”
It has been held, that when the intention is clear, a power may enable the disposition of a fee, although no words of inheritance are used'; as where a testator gives a power to sell lands, the donee may sell the inheritance, because the testator gives the same power he himself had. 1 Sugd. on Powers 501. This was decided in the case of Liefe v. Saltingstone, 1 Mod. R. 189. The devise was to the testator’s wife.for life, “ and by her to be disposed of to such of my children as she shall think fit.” It was held by one of the judges, that the wife had power to dispose of an estate for life only, because if the testator had said, I dispose of it to my son, it would have been but an estate for life: But a majority of the court held otherwise, as there was a difference (they said) between the devise *464 of an interest and a power; and they granted that if the testator had said, I dispose of it to my son, it would have been but for life; but here the testator gives a power to dispose, which seems to imply such a power as he himself had, which was to dispose of the fee. Ibid. 603.
It is true, there is no question here as to the quantity of estate, or whether for fee or for life, which may be given under the power; yet the reasoning upon which the decision in the foregoing case is founded, seems to me to be not without force as applied to this. When the testator, in clothing his wife with such broad powers, as must be conceded under any reasonable construction of the clause in question, employs language susceptible of a construction which (without violence to the ordinary import of the words,) would carry the power of sale, and this too, in close connection and association with the idea of his own power and control over the estate, it would seem to be in accordance with the spirit and reasoning of the foregoing case to hold, that he designed to make his own power and control the measure or standard of that which he was conferring on the wife, subject only to the restriction already mentioned; that in conferring such a broad discretion, he did not mean to withhold a power which might be so essential to its proper exercise, to wit, a power to bestow the gifts in such shape as would, in the judgment of his wife, probably be most advantageous to the several objects of his bounty.
Whether the third and fourth clauses of the will are to be taken as restrictions on the powers of the wife in respect to the shares or proportions in which the estate is to be distributed, and as requiring that ultimate equality is to be the rule of such distribution, is a question which, in the view I take of the case, it is not necessary for us to decide. I think it clear, that in making provision for the manner in which the estate *465 should be apportioned in the event his wife should die “ without making or publishing her last will and testament,” the testator did not mean to point to such last will or testament as the only instrument or means by which his wife might dispose of his intended bounty. It is true, that the express grant of a power as to the disposition of the estate which the donee would have had, without such express grant, has in many cases been taken as indicative of an intention to confine the donee to that power, on the ground that such express grant would otherwise be supererogatory. But to give the will such a construction here, would be to destroy that scheme of placing the wife in his stead; of conferring on her a parental control, and elothing her with the power and means of advancing the interests of the children, as and when they might in her judgment require aid and assistance, which is so obvious on reading the whole will.
It is to be observed too, that the power to make the appointment by last will and testament is not given in express and direct terms; and if that was the only mode of appointment in the mind of the testator, it is difficult to suppose that he would not have given more prominence to a provision so directly in conflict with the otherwise apparent general intention of the will.
In the case of Grace v. Wilson, the inference in favor of restricting the appointment to a decree was far stronger than here; and yet it was held that the power was general. In that case Thomas Grace by his will gave to his wife Mary Grace four thousand pounds, or whatever surplus might arise after the moiety left to his two minor children, subject to a proviso therein contained (that is to say) that she should enjoy the interest thereof for her natural life, and dispose of the same to such of her children as she should devise and ■ think proper. It was insisted that the power was confined to a will. In favor of the *466 contrary construction, Tomlinson v. Dighton, 1 P. Wms. 149, and other cases were relied on, and the ease was distinguished from Doe v. Thornley, 10 East’s R. 438; and the case was decided accordingly. Sir William Grant was clearly of opinion that the power was not confined to. a will. If the devise had been to her for life, and then to devise as she might think proper, (he said) then the word devise would have admitted but of one sense; but here it is, as she shall dispose, which admits of two constructions, and thus means as she should think right. Suppose you translate devise, as she shall bequeath by will; how then would it read ? To dispose thereof as she shall bequeath by will and think proper; therefore she has a general power.
I have taken the statement of the case from Sugden on Powers, vol. 1, p. 271. Take the language of the will here providing for the event of the wife’s dying without a will in connection with the preceding clause, and the inference of a general power from the whole, is much more obvious than in the case just cited. '
If the views I have already presented be correct, little remains to be considered in order to dispose of the only other question in the case necessary to be decided, viz-: Whether the purchaser is bound to see to the application of the purchase money. For even upon the supposition that the testator designed ultimate equality in the gifts to his children, (as to which I express no opinion) the wife is left free to sell the estate if she thinks proper, and to make advancements to the children in money or property, from time to time, as she in her discretion may deem best. I know ■of no rule which would involve the purchaser in the performance of a trust so broad and complicated, and requiring such a time for its final consummation. The •general rule is, I think, clearly the other way; for when the trusts are defined, and yet the money is not merely to be paid over to third persons, but is to be *467 applied by the trustees to certain purposes, which require, on their part, time, deliberation and discretion, it seems that the purchaser is not bound to see to the due application of the purchase money. As where it is to pay all debts which shall be ascertained within eighteen months after the sale; or where the trustees are to lay out the money in the funds, or in the purchase of other, lands on certain trusts. 2 Story Equ. Jur. § 1134.
Upon the whole, it seems to me not only that a sale of the real estate, followed by an appointment of the proceeds thereof to the children, should be sustained by a court of equity as a substantial execution of the powers under the will, in accordance with the principles declared in the cases of Roberts v. Dixall, Long v. Long, and Kenworthy v. Bate, but that upon the payment of the purchase money by Levisay to Mrs. Steele, he would stand discharged of all other duty; and on receiving the conveyance which she has stipulated to make, he would be invested with a title to the land he has purchased, which would be available to him as well at law as in equity.
I think, therefore, that Levisay has shown no case for the interposition or aid of a court of equity; and that the decree rendered should be reversed, and the bill dismissed: But as the questions raised by the bill are not free from doubt, it should be dismissed, on the terms of the plaintiff’s paying only his own costs.
The other judges concurred in the opinion of Daniel, J.
Decree reversed.